## Alford v. Beaird et al.
## Hughes Transp., Inc., v. Same.

Dec. 18, 1945.

Mahan & Mahan and Edwin O. Davis for appellants.

Finley F. Gibson for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER— Reversing.

Appellant Alford, driver of a truck owned by appellant, Hughes Transportation, Inc., parked his truck on the property of the Halfway House, between Frankfort and Shelbyville on U. S. Highway 60, at a place forty feet north of the highway. He then went to sleep, using the front seat as a bed. J. Howard Vaught, driving a truck owned by appellees, doing business as Gasoline Transport Company, traveling east on the highway, lost control of his vehicle, which thereupon left the highway and crashed into the parked truck. Appellants filed separate suits for damages against appellees. Since the rights of the owner and driver of appellant's truck are the same, we will refer to the parties in the singular, as appellant and appellee. Under instructions complained of, the jury rendered a verdict for appellee.

The first ground for reversal is that the Court erred in refusing to sustain appellant's motion for a directed verdict except as to the amount of damages. It is not contended, nor could it be, that appellant was guilty of contributory negligence. Where an instrument which causes an injury is shown to be under the control of the defendant, and the accident is such as would not happen in the ordinary course of events if those having control of the instrument used the degree of care imposed upon them by law, proof of the happening of the accident, in itself, affords reasonable evidence that the accident occurred as the result of negligence on the part of the defendant, unless the latter shows it to be attributable to some other cause. Paducah Traction Co. v. Baker, 130 Ky. 360, 113 S. W. 449, 18 L. R. A., N. S., 1185; Ralston v. Dossey, 289 Ky. 40, 157, S. W. 2d 739. The rule above stated is known as the res ipsa loquitur doctrine. Paducah Traction Co. v. Baker, supra. Appellee's truck which crashed into appellant's truck was under the control of appellee; and the accident is such that, in the ordinary course of events, would not have happened, had the driver used ordinary care. That being true, since appellant was not guilty of contributory negligence, his motion for a peremptory instruction should have been sustained, Pickering v. Simpkins, 271 Ky. 288, 111 S. W. 2d 650, unless appellee has met the burden imposed upon him to show the injuries were caused by an intervening agency not under his control. But where the intervening agency is a hazard which could have been averted by the exercise of ordinary care upon the part of him who seeks to rely upon it, the failure to exercise such care in the circumstances will not exonerate the defendant from the liability imposed under the rule pronounced in Pickering v. Simpkins, supra. In other words, if a condition which causes a hazard, which operates as an intervening agency resulting in an accident, is created by the negligence of the defendant, the latter may not rely upon the intervening agency to relieve him of liability. In this case, appellee seeks to avert liability upon the ground that his truck collided with a stray horse on the highway, as a result of which the driver, Vaught, lost control of his truck and was powerless to prevent the collision resulting in the injury to appellant.

The question now resolves itself into whether appellee's driver was using ordinary care in the operation

of his vehicle when it struck the stray horse on the highway. Vaught's own testimony and the physical facts are conclusive of the question. He testified that he struck the horse midway between a thicket and appellant's truck. The distance between the thicket and the place at which appellant's truck was parked is five hundred seven (507) feet; thus, the point of the collision with the horse is about two hundred fifty (250) feet west of the parked truck, and two hundred fifty (250) feet east of the thicket. The road at that point is virtually level, and the view of the highway, right of way, and fields beyond, is totally unobstructed. The accident occurred about midnight September 18, 1943; the road was dry, the weather clear; the concrete pavement of the highway was stipulated to be eighteen feet in width; the road curves ever so slightly to the left, but the curve favors the driver of an easterly bound vehicle in observing objects to the south and off of the highway, Vaught's brakes and lights were in perfect condition. He testified that he could discern a substantial object three to four hundred feet ahead; that he did not see the horse until he was so close upon him that it was impossible for him to avert the accident, or even to attempt it; that the horse was angling to the north, but headed and proceeding easterly along the highway; but "was still in my lane of traffic, I know that." The left front fender of appellee's truck struck the horse on the back fleshy portion of its right hip (the rump); the horse was almost midway of the highway when he was struck. Vaught testified that he was driving approximately thirty miles per hour. The horse was large in size, dark bay in color. The berm, extending for several feet, is virtually on the same horizontal plane as the highway; the remainder of the right of way is slightly lower than the level of the road. Vaught had a clear view ahead on the highway, and for many feet south of its limits, for a distance of at least one thousand feet ahead. Had he been keeping a lookout, as it was his duty to do, he could not have failed to see the horse in time to slow the progress of his vehicle sufficiently to avoid colliding with the animal. He admitted that he was in virtual collision with the horse when he first discovered its presence on the open highway straight ahead. His exact testimony follows: ·

"Q. Where was the horse when you first saw the horse? A. When I first saw the horse he came from

the right-hand side of the road that quick (indicating by snapping fingers), just like he leaped or jumped. It didn't seem to me like it took him long to get there.

"Q. Where was he when you first saw him? A. On the highway.

"Q. And how far was he from the edge of the highway—He came from the righthand side, you say? A. Yes.

"Q. And how far was he from the edge of the highway when you first saw him? A. Well, he was still in my lane of traffic, I know that.

"Q. He hadn't gotten over to the other side? A. No, not the other side when I hit him.

"Q. How was he headed, down the highway, or across the highway? A. Straight in front of me. You might say, angling.

"Q. You mean he was headed east, the horse was? A. Yes, that is right.

"Q. And how close were you to him when you first saw him? A. Close enough that I didn't have time to do anything. The horse was there, and it looked to me about as big as the hand.

"Q. All you know is that you were right on him? A. All I know is the horse was there, and that is the whole thing."

The answer to the last question propounded to Vaught sums up our own impression of his previous testimony, viz., all he knew was the horse was there: a dark horse against a well lighted, white background, proceeding in the middle of the highway straight ahead. He did not testify that the horse came off of the berm onto the highway; when he first saw the horse, he was on the paved portion of the highway. This evidence, together with the physical surroundings, conclusively shows that he was not keeping a lookout ahead; and his failure to do so was negligence, but for which the accident would not have occurred. Appellee may not exonerate himself of liability by the invocation of an intervening cause which his agent's own negligence helped to create. The Court should have instructed the jury to find for appellant under proper instruction in respect to the measure of damages.

Such being our view, and it being unlikely that the evidence will differ upon another trial, we specifically reserve a decision in respect to the instruction complained of.

The judgments are reversed, for proceedings consistent with this opinion.